AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Western District of Arkansas
Fayetteville Division

US DISTRICT COURT
WESTERN DIST ARKANSAS
FILED
NOV 25 2019
DOUGLAS F. YOUNG, Clerk
By _____ Deputy Clerk

In the Matter of the Search of )
1321 Aspen Circle )   Case No. 19CM127
Elkins, AR 72727 )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe property to be searched and give its location)*: **See Attachment A.**

located in the Western District of Arkansas, there is now concealed *(identify the person or describe the property to be seized)*: **See Attachment B.**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

■ evidence of a crime;

■ contraband, fruits of crime, or other items illegally possessed;

■ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2251 | Production of Child Pornography |
| 18 U.S.C. § 2252/2252A | Possession/Distribution of Child Pornography |

The application is based on these facts:

√ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

William DeVito, HSI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 11/25/19

_____
*Judge's signature*

City and state: Fayetteville, Arkansas

Erin L. Wiedemann, Chief United States Magistrate Judge
*Printed name and title*

## ATTACHMENT A
### DESCRIPTION OF PROPERTY TO BE SEARCHED

Any and all structures and outbuildings to include vehicles located on the property or arriving on the property and curtilage of **1321 Aspen Circle, Elkins, Arkansas 72727** (the "SUBJECT PREMISES"), more particularly described as a single-story home with yellow colored siding, white trim, and a gray roof.



## ATTACHMENT B
### ITEMS TO BE SEARCHED FOR AND SEIZED

a. Images of child pornography, including any and all digital images stored on devices capable of such, and files containing images of child pornography in any form wherever it may be stored or found including, but not limited to:

  i. any and all computer hardware and software capable of storing, accessing, sending or receiving digital information, computer system, computer tablet, smart phones, micro SD cards, and related peripherals, or any other device capable of accessing the internet and/or storing digital data; tapes, cassettes, cartridges, streaming tape, commercial software and hardware; internal or external storage devices, computer disks, disk drives, monitors, computer printers, modems, tape drives, disk application programs, data disks, system disk operating systems, magnetic media floppy disks, hardware and software operating manuals, tape systems and hard drive and other computer related operation equipment, digital cameras, scanners, computer photographs, Graphic Interchange formats and/or photographs, undeveloped photographic film, slides, and other visual depictions of such Graphic Interchange formats (including, but not limited to, JPG, GIF, TIF, AVI, and MPEG), and any electronic data storage devices including, but not limited to, cellular telephones, hardware, software, diskettes, backup tapes, CD-ROMS, DVD, Blue Ray players, Flash memory devices, and other storage mediums; any input/output peripheral devices, including but not limited to passwords, data security devices and related documentation, and any hardware/software manuals related to or used to: visually depict child pornography; contain information pertaining to the interest in child pornography; and/or distribute, receive, or possess child pornography, or information pertaining to an interest in child pornography, or information pertaining to an interest in child pornography;

  ii. any and all applications (apps) contained on any electronic device, books and magazines, digital or otherwise, containing visual depictions of minors engaged in sexually explicit conduct or involving the physical description of sexual activity involving minors

  iii. originals, copies, and negatives of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256; and

  iv. motion pictures, films, videos, film negatives, digital or print copies, and other recordings of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256;

b. information or correspondence pertaining to the possession, receipt or distribution of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256, that were transmitted or received using computer or any internet capable device, or any other

facility or means of interstate or foreign commerce, common carrier, or the U.S. mail including, but not limited to:

   i.  envelopes, letters, electronic mail, chat logs, and electronic messages, establishing possession, access to, or transmission through interstate or foreign commerce, including by United States mail or by computer, of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256; and

   ii. books, records, and any other written or digital information bearing on the production, reproduction, receipt, shipment, orders, requests, trades, purchases, or transactions of any kind involving the transmission through interstate or foreign commerce including by United States mail or by computer of any visual depiction of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256;

c.  Any and all credit card information including but not limited to bills and payment records for subscription to internet or non internet-based companies allowing access to images of minors engaging in sexually explicit activities, or reflecting the purchase of or access to any material related to child pornography;

d.  Any and all correspondence pertaining to the production, possession, receipt or distribution of visual depictions of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256 whether transmitted or received using computer, a facility or means of interstate commerce, common carrier, or mail.

e.  Any and all computer-related documentation to include written, recorded, printed, or electronically stored material which explains or illustrates how to configure or use computer hardware, software, or other related items. In addition to passwords, to include alphanumeric strings, pass-phrases, password files, and similar decryption codes necessary to access data that is encrypted or otherwise inaccessible.

f.  Any and all security devices, to include physical keys, encryption devices, "dongles", and similar physical items needed to gain access to associated computer hardware. In addition, peripherals, equipment that send data to, or receive data from, computer hardware, but do not normally store user data, such as keyboards, mice, printers, scanners, plotters, video display monitors, modems, cables, and certain types of facsimile machines.

g.  Any and all address books, names, and lists of names and addresses of minors visually depicted while engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256.

h.  Any and all diaries, notebooks, notes and any other electronic records reflecting personal contact and any other activities with minors visually depicted while engaged in sexually explicit conduct, as defined in Title 18, United States Code, and Section 2256.

k.  In searching the data, the computer personnel may copy all of the data contained in the computer equipment and storage devices. In doing so, the search is authorized to allow the

computer personnel to recover and examine: all images contained upon any seized device wherever they may be found, a search of unallocated spaces for images related to child pornography; a search to identify Peer-to-Peer programs, a search of terms related to child pornography, and any other search and examination that would reveal the existence of child pornography on the seized item, including deleted, hidden, accessing applications (apps), and/or encrypted data. Emails, data files, and any other electronic information related to the ownership of the seized electronic media may be copied, imaged and examined during purposes of conducting the forensic examination.

ATTACHMENT C

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS

STATE OF ARKANSAS          :
                           :
                           :  ss.  **A F F I D A V I T**
                           :
COUNTY OF WASHINGTON

**Affidavit in Support of Application for Search Warrant**

I, William DeVito, being duly sworn, depose and state as follows;

1. I am a Special Agent with the Department of Homeland Security, Homeland Security Investigations ("HSI"), currently assigned to the Assistant Special Agent in Charge Office in Fayetteville, Arkansas. I have been so employed with HSI since July, 2011. As part of my daily duties as a HSI agent, I investigate criminal violations relating to child exploitation and child pornography including violations pertaining to the illegal production, distribution, online enticement, transportation, receipt and possession of child pornography, in violation of 18 U.S.C. §§ 2251, 2251A, 2422(b), 2252(a) and 2252A. I have received training in the area of child pornography and child exploitation and have had the opportunity to observe and review numerous examples of child pornography (as defined in 18 U.S.C. § 2256) in all forms of media including computer media. I have also participated in the execution of numerous search warrants and arrest warrants, a number of which involved child exploitation and/or child pornography offenses. This Affidavit is being submitted based on information from my own investigative efforts as well as information obtained from others who have investigated this matter and/or have personal knowledge of the facts herein.

2. This Affidavit is being submitted in support of an application for a search warrant for the premises located at **1321 Aspen Circle, Elkins, Arkansas 72727** the **"SUBJECT PREMISES"**. As such, it does not include all of the information known to me as part of this investigation, but only information sufficient to establish probable cause for the requested search warrant.

## Statutory Authority

3. This investigation concerns alleged violations of Title 18, United States Code, Sections 2251, 2252 and 2252A, relating to material involving the sexual exploitation of minors, which has been defined in Title 18, United States Code, Section 2256, as an individual under 18 years of age.

4. Under Title 18, United States Code, Section 2251, it is a federal crime for any person using any means or facility of interstate and foreign commerce, to entice, use, persuade…a person that has not obtained the age of 18 years to engage in sexually explicit conduct for the purpose of creating a visual depiction of such conduct.

5. Under Title 18, United States Code, Sections 2252(a)(1) (transportation), 2252(a)(2) (receipt and distribution), and 2252(a)(4)(B) and 2252A(a)(5)(B) (possession), it is a federal crime for any person to transport, distribute, receive, and possess child pornography, as that term is defined by federal law. Further under Title 18, United States Code, Section 2253(a)(3), a person who is convicted of an offense under Title 18, United States Code, Sections 2252 or 2252A, shall forfeit to the United States such person's interest in any property, real or personal, used or intended to be used to commit or to promote the commission of such offense.

## Computers and Child Pornography

6. Based upon my knowledge, training, and experience in child exploitation and child pornography investigations, and the experience and training of other law enforcement officers with whom I have had discussions, I know that computers and computer technology have revolutionized the way in which child pornography is produced, distributed and utilized. Prior to the advent of computers and the Internet, child pornography was produced using cameras and film, resulting in either still photographs or movies. The photographs required darkroom facilities and a significant amount of skill in order to develop and reproduce the images. As a result, there were definable costs involved with the production of pornographic images. To distribute these images on any scale also required significant resources. The photographs themselves were somewhat bulky and required secure storage to prevent exposure to the public. The distribution of these wares was accomplished through a combination of personal contacts, mailings, and telephone calls, and compensation for these wares would follow the same paths. More recently, through the use of computers and the Internet, distributors of child pornography use membership-base/subscription-based websites to conduct business, allowing them to remain relatively anonymous.

7. In addition, based upon my own knowledge, training, and experience in child exploitation and child pornography investigations, and the experience and training of other law enforcement officers with whom I have had discussions, I know that the development of computers has also revolutionized the way in which those who seek out child pornography are able to obtain this material. Computers serve four basic functions in connection with child pornography: production, communication, distribution, and storage. More specifically, the

3

development of computers has changed the methods used by those who seek to obtain access to child pornography in these ways.

8. Producers of child pornography can now produce both still and moving images directly from a common video or digital camera or cellular electronic device. The camera is attached using a device such as a cable, or digital images are often uploaded from the camera's memory card, directly to the computer. Images can then be stored, manipulated, transferred, or printed directly from the computer. Images can be edited in ways similar to how a photograph may be altered. Images can be lightened, darkened, cropped, or otherwise manipulated. As a result of this technology, it is relatively inexpensive and technically easy to produce, store, and distribute child pornography. In addition, there is an added benefit to the pornographer in that this method of production does not leave as large a trail for law enforcement to follow.

9. The Internet allows any computer to connect to another computer. By connecting to a host computer, electronic contact can be made to literally millions of computers around the world. A host computer is one that is attached to a network and serves many users. Host computers are sometimes operated by commercial Internet Service Providers (ISPs), which allow subscribers to dial a local number and connect to a network which is, in turn, connected to the host systems. Host computers, including ISPs, allow e-mail service between subscribers and sometimes between their own subscribers and those of other networks. In addition, these service providers act as a gateway for their subscribers to the Internet or the World Wide Web.

10. The Internet allows users, while still maintaining anonymity, to easily locate other individuals with similar interests in child pornography; and websites that offer images of child pornography. Those who seek to obtain images or videos of child pornography can use standard Internet connections, such as those provided by business, universities, and government agencies,

to communicate with each other and to distribute child pornography. These communication links allow contacts around the world as easily as calling next door. Additionally, these communications can be quick, relatively secure, and as anonymous as desired. All of these advantages, which promote anonymity for both the distributor and recipient, are well known and are the foundation of transactions involving those who wish to gain access to child pornography over the Internet. Sometimes the only way to identify both parties and verify the transportation of child pornography over the Internet is to examine the recipient's computer, including the Internet history and cache to look for "footprints" of the websites and images accessed by the recipient.

11. The computer's capability to store images in digital form makes it an ideal repository for child pornography. The size of the electronic storage media (commonly referred to as a "hard drive") used in home computers has grown tremendously with the last several years. Hard drives with the capacity of 160 gigabytes are not uncommon. These drives can store thousands of images at very high resolution. Magnetic storage located in host computers adds another dimension to the equation. It is possible to use a video camera to capture an image, process that image in a computer with a video capture board and save that image to storage in another country. Once this is done, there is no readily apparent evidence at the "scene of the crime." Only with careful laboratory examination of electronic storage devices is it possible to recreate the evidence trail.

12. It should be noted that Internet Protocol (IP) numbers are unique identifiers leased to Internet customers by their ISP's. Although IP numbers are capable of changing over time, only one (1) unique IP number can be assigned to a given customer's computer at any given

5

time. Logs of these leased IP's (and their assigned customer accounts) are stored by ISP's routinely.

13.  Your Affiant knows from his own experience and the training and experience of other law enforcement officers that Internet computers identify each other by an Internet Protocol or IP address. These IP addresses can assist law enforcement in finding a particular computer on the Internet. These IP addresses can typically lead the law enforcement officer to a particular Internet service company and that company can typically identify the account that uses the address to access the Internet.

## Summary of the Investigation to Date

14.  Beginning in September 2019, the HSI Internet Crimes Against Children (ICAC) Task Force and Arkansas State Police with assistance from local law enforcement agencies, set up an operation to target online predators during the 2019 Bikes, Blues and BBQ Rally in Northwest Arkansas. As a part of the operation, undercover law enforcement agents put out multiple advertisements on online websites and mobile applications or "apps." On or about September 23, 2019, GATEWOOD responded to an undercover Plenty Of Fish posting where an Arkansas undercover law enforcement officer was representing themselves as a mother. Between September 23 and September 24, 2019, GATEWOOD, utilizing the accounts "gearz007" and "mbrown988" and representing himself as "Aaron" engaged in messages with the believed mother of two minor females. GATEWOOD and the undercover agent then exchanged cellular phone numbers and continued their conversation via text message. GATEWOOD communicated with the undercover agent utilizing the phone number 479-502-XXXX. During these text conversations, GATEWOOD made multiple statements regarding what he wanted to do to the

believed 7-year-old child when he met the believed mother. In particular, GATEWOOD stated "her sit on my face while you suck on my cock."

15.  On September 24, 2019, GATEWOOD made arrangements with the undercover agent acting as the mother to meet to hang out with her and the 7 year old. The undercover agent suggested GATEWOOD bring lubricant for the 7 year old. On September 24, 2019, GATEWOOD was encountered as he arrived at the prearranged meeting location discussed with the believed mother of the seven (7) year old minor female for the sexual encounter. At the time of his arrest for violations of Arkansas state laws, GATEWOOD was found to be in possession of a Samsung Galaxy S7 bearing SN R58H817K83P as well as lubricant.

16.  On November 12, 2019, a search warrant (5:19CM123) for the Samsung cellular phone was obtained in order to locate evidence of Attempted Online Enticement of a Minor in violation of Title 18, United States Code, Section 2422(b). On November 15, 2019, while conducting this search, it was revealed the Samsung cellular phone contained evidence of child pornography. Specifically, the search yielded the following:

Filename: 20190530_011253.mp4
File path: Media/Phone/DCIM/Camera/20190530_011253.mp4
Creation date: 5/30/2019 1:20:37 AM
MD5: 2ae32a4c0a7d4533fdb1c6eaf0589857

This video is approximately 07:41 (mm:ss) in length and depicts a prepubescent white female lying on a bed. The sheets are an off-white color with arrows printed on them. The child is partially covered with a camouflage colored blanket and is wearing white cotton style panties, with black pants or shorts. An unidentified white male is observed pulling the child's panties aside and exposing her vagina to the camera. At approximately 04:09 (mm:ss) in the video, the male exposes his erect penis to the camera and appeared to be masturbating. At approximately 04:35 (mm:ss) the male rubs his exposed penis on the child's buttocks and vaginal area. At approximately 05:35 (mm:ss) the male digitally penetrates the child's vagina. At approximately 07:07 the male puts his face between the girl's legs and appears to be performing oral sex on her. While performing oral sex on the child, the males head is exposed to the camera and his hair is described as long (shoulder length) and shaggy.

17. On November 20, 2019, a search warrant (19:CM126) was sought and obtained for the Samsung cellular phone to look for evidence of child pornography.

18. GATEWOOD provided law enforcement with a home address of **1321 Aspen Circle, Elkins, Arkansas 72727**, the "**SUBJECT PREMISES**". Furthermore, law enforcement checks as well as his Arkansas Driver's License also show the aforementioned address as his home of record. Additional queries also revealed two vehicles registered to GATEWOOD at the "**SUBJECT PREMISES**".

## Conclusion

19. *Necessity of On-site and Off-site examinations of entire computers or storage media.* Based on my experience and the training and experience of other agents, many of the items sought in this affidavit may be stored electronically. Based on my experience and consultation with computer forensic experts, I know that electronic files can be easily moved from computer or electronic storage medium to another computer or medium. Therefore, electronic files downloaded to or created on one computer can be copied on or transferred to any other computer or storage medium at the same location. In addition, based on my experience, I know that searching computerized information for evidence of crime often requires special agents to seize most or all of a computer system's central processing unit (CPU), input/output peripheral devices, related software, documentation, and data security devices, including passwords, so that a qualified computer expert can accurately retrieve the system's data in a laboratory or other controlled environment. This is true because of the following:

(a) Volume of evidence: Computer storage devices such as hard disks, diskettes, tapes and laser disks, can store the equivalent of thousands of pages of information. This sorting

process can take up to several months to complete, depending on the volume of data stored. Therefore, it would also be impractical to attempt this type of data search on site.

(b) Technical requirements: Searching computer systems for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment. The vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications, so it is difficult to know before a search which expert is qualified to analyze the system and its data. In any event, data search protocols are exacting scientific procedures designed to protect the integrity of the evidence and to recover even hidden, erased, compressed, password-protected, or encrypted files. Since computer evidence is extremely vulnerable to inadvertent or intentional destruction (both from external sources and from destructive code embedded in the system such as a "booby trap"), a controlled environment is essential to its complete and accurate analysis.

20. Therefore, authorization is sought in this application to seize the items set forth in attachment "B" that are found on the premises to be searched, in order to examine those items for evidence. If it is determined that data has been seized that does not constitute evidence of the crimes detailed herein, the government will return said data within a reasonable time.

21. Based on my experience and the training and experience of other agents involved with this investigation, your Affiant knows that individuals involved in the sexual exploitation of children through child pornography almost always keep copies of their sexual explicit material. Among the reasons copies are maintained is because child pornography is illegal to openly purchase, and the most common method of acquiring it is by trading with other people with similar interests. It is also known that due to the inherent illegality of these sexually explicit

9

materials, they are most often kept in a place considered secure, usually a residence, to avoid detection by law enforcement.

22. Based on the foregoing information, probable cause exists to believe there is located at **1321 Aspen Circle, Elkins, Arkansas 72727**, the "**SUBJECT PREMISES**", evidence of violations of Title 18, United States Code, Sections 2251, 2252, and 2252A et seq. Your Affiant prays upon his honorable court to issue a search warrant for the "**SUBJECT PREMISES**" for the items set forth in attachment "B" (which is attached hereto and incorporated herein by reference), that constitute evidence, fruits, and instrumentalities of violation of Title 18, United States Code, Sections 2251, 2252 and 2252A et seq.

_____
William DeVito, Special Agent
Homeland Security Investigations

Affidavit subscribed and sworn to before me this 25th day of November, 2019.

_____
Honorable Erin L. Wiedemann
Chief United States Magistrate Judge

10